# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

AARON D. LUDWICK,

                Petitioner,      :          Case No. 1:24-cv-51

    - vs -                              District Judge Susan J. Dlott
                                          Magistrate Judge Michael R. Merz

TIM SHOOP, Warden, Chillicothe
  Correctional Institution,

                                    :
            Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Aaron Ludwick under 28 U.S.C. § 2254 to obtain relief from his conviction for rape in the Highland County Court of Common Pleas. The case is ripe for decision on the Petition (ECF No. 1), State Court Record (ECF No. 6), the Return of Writ, ECF No. 7), and Petitioner's Amended Traverse (ECF No. 35).

The Magistrate Judge reference of the case has recently been transferred to the undersigned pursuant to Amended General Order 22-05 to help balance the Magistrate Judge workload in the District.

## Litigation History

On March 2, 2021, the Highland County Grand Jury returned an indictment charging Ludwick with four counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b) and one count of rape in violation of Ohio Revised Code § 2907.02(A)(2). A trial jury found Ludwick guilty of the first four counts with the specification that the victim was under ten years of age and

1

also guilty of the fifth count. The trial court imposed a mandatory sentence of life imprisonment without the possibility of parole on Counts One through Four and eleven to sixteen years on Count Five.[1] Ludwick took a direct appeal to the Ohio Fourth District Court of Appeals which affirmed the conviction. *State v. Ludwick,* 2022-Ohio-2609 (Ohio App. 4th Dist. Jul. 26, 2022)(copy at State Court Record, ECF No. 6, Ex. 10). The Ohio Supreme Court declined to exercise jurisdiction over a further appeal. *State v. Ludwick,* 168 Ohio St. 3d 1448 (Nov. 8, 2022).

On September 7, 2022, Ludwick filed an application to reopen his direct appeal under Ohio R. App. P. 26(B)(State Court Record, ECF No. 6, Ex. 15). The Fourth District Court of Appeals denied relief at the first stage of the required analysis under *State v. Leyh*, 166 Ohio St.3d 365 (2022). Ludwick appealed but the Ohio Supreme Court declined to exercise jurisdiction (Entry, State Court Record, ECF No. 6, Ex. 20).

On September 14, 2022, Ludwick filed a Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 6, Ex. 21). The trial court denied the Petition on the merits. *Id.* at Ex. 23. In a lengthy opinion by Judge Michael Hess, the Fourth District Court of Appeals affirmed the dismissal. *Id.* at Ex. 29. The Ohio Supreme Court again declined to exercise appellate jurisdiction. *Id.* at Ex. 32.

Ludwick filed his habeas corpus petition in this Court on January 23, 2024 (ECF No. 1). He pleads the following Grounds for Relief:

> **Ground One**: **Ineffective Assistance of Trial Counsel,** where counsel failed to investigate, preserve and present an alibi defense, and failed to impeach N.A.L.'s[2] known false testimony. The deficient performance of Trial Counsel was prejudicial to Ludwick and denied his right to due process because counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment denying him a fair trial, a trial whose result is reliable.

---

[1] The sentence on Count Five was later modified to eleven years.
[2] These are the initials of the victim, usually referred to in the State Court Record as "N.L."

**Supporting Facts:** At trial the accuser, N.L., proffered testimony that was demonstrably false. On cross examination, Tr. at Aug, 12, 2021 page 156 line 18-20, Mr. Ring asks, "Okay. What about adults, would adults be coming in your apartment, back and forth that sort of thing?" N.L. answers on line 21, "Uh, No." Tr. at Aug 12, 2021 page 157 lines 1-2, Ring again asks, "You don't have any recollection of that what-so-ever?" N.L. answers clearly and confidently, "No one would usually come to our house."

The sworn affidavits of Nathan Peck, Donald R. Davy II, and Jameson Carpenter clearly present an alibi and impeach the credibility of N.L.'s testimony. The statements indicate that Mr. Ludwick was with friends and family when these incidents allegedly occurred and impeach N.L.'s testimony. In his sworn affidavit Jameson Carpenter states, "1) I have known Aaron Ludwick since 2003, and was his neighbor at Margie apartments from April 2009 to November 2011, visiting his home as often as 5-6 days a week." Nathaniel Peck states in his sworn affidavit, "1) I have known Aaron Ludwick since 2009, and I was neighbor to him at Margie Apartments, 2010 to time he moved to Highland. 2) Would visit with neighbors outside the apartment, Aaron would most of time/quit [sic] often at the apartment complex, and when he moved I go to his place 2 to 5 times a week." Donald R. Davy II states in his sworn affidavit, "Aaron always had an open door policy any family and friends was welcome in his home."

N.L. lied about the household environment, specifically who was present, and the time frames they were present. Defense Counsel failed to prepare for trial. Counsel's failure left him with no case to present. [sic]

**Ground Two**: **Ineffective assistance of Appellate Counsel**, where Counsel's failure to raise the claim – Trial Counsel's failure to impeach the credibility of the prosecution's key witnesses, Detective Vincent Antinore and Cheryl Denise Fauber's, known false testimony was constitutionally deficient assistance of counsel. The resulting prejudice of both Appellate and Trial Counsel's deficient performance was a violation of Ludwick's Sixth Amendment right to the effective assistance of counsel.

3

**Supporting Facts:** This ineffective assistance of Appellate Counsel claims was [sic] presented to the Ohio Fourth District Court of Appeals in Ludwick's Ohio App. R. 26 (B), application to reopen direct appeal.

On the first day of trial the Prosecutor Anneka Collins questioned Detective Vincent Antinore. On direct examination, Tr. at pg. 356 lines 10-21,

Q: Did you speak with the defendant?
A. I did, yes.
Q. And can you give a synopsis of that interview?
A. So, the interview was rather brief. Um, I spoke with Aaron at the Sheriff's office and we started just with normal conversation but I quickly explained that we were there to talk about his romantic relationship with N.L. He nodded his head uh giving a nonverbal que [sic] that he understood what I was talking about, when I asked him if he understood what I was talking about.
Q. And did that end the conversation?
Pg. 357 line 1, A: It ended shortly thereafter, yes.

This indisputably false testimony was presented as a confession. The State's presentation of testimonial evidence that Ludwick confessed was not rebutted or addressed in any way by Defense Counsel. Mr. Ludwick never in any way acknowledged these allegations or affirmed any understanding or knowing as the Detective stated. Mr. Ludwick invoked his fifth amendment privilege the instant the Detective made this false statement in the interview. The Detective lied, there was no nonverbal que [sic]. Detective Antinore has consistently stated this demonstrably false claim.

The second occurrence of known false testimony being allowed to proceed uncontested and therefore being accepted as truth, was also on the first day of trial. The Prosecutor questioned Cheryl Denise Fauber, mother of N.L.'s classmate, Tr. At Aug 12, 2021, pg. 335 lines 13-22 and pg. 336 lines 1-6.

Q: Based on what Kylie told you what did you do?
A: Well as I said I asked her a few questions about the situation. Um, and then I called the school principal um to report this information. And um, of course Kylie did not want me to do that. But I felt as a parent having information like that it would be important to notify somebody so that it could be looked into.

4

Q: So, who at the school do you, did you speak with if you remember?
A: Uh, the principal, Dee Miller.
Q: Now that was when the girls were in the fourth grade?
A: Yes.

Defense Counsel had ample information and opportunity to introduce evidence regarding this false testimony. Ludwick presented with his Ohio App. R. 26(B), a police report from discovery entered March 23, 2021, item 19 (C)(1), titled – Supplementary Report Call with Ms. Dee Miller.

The report states, "On Tuesday February 23, 2021, I spoke again with Ms. Dee Miller of Fairfield School District. Ms. Miller reported that she did research whether any sexual abuse allegations were reported to the school district regarding N.A.L. and found that an elementary school teacher (Ms. Lorrie Russel) would have been the teacher who the allegations were reported at the time." It is clear by the Principal's response she had no knowledge of any reports.

The second potential evidence that Trial Counsel failed to produce at trial was a video submitted via the docket entry on August 5, 2021, additional discovery (by state), within the document item (C)(1) Audio conversation between victim and mother – attached. N.L. can be heard telling her mother, "How could I have told [inaudible] I couldn't even tell my own mom." Ludwick included transcripts of this video with his Ohio App. R. 26(B), application to reopen direct appeal. Trial Counsel used this evidence to argue against the admissibility of Fauber's testimony on August 11, 2021 but inexplicably did not present it at trial for the jury to consider.[sic]

**Ground Three: Ineffective Assistance of Appellate Counsel.**

Appellate Counsel's failure to raise the claim – the Prosecutor's choice to elicit false testimony from Detective Vincent Antinore and Cheryl Denise Fauber, rose to the level of prosecutorial misconduct – was deficient performance violating Ludwick's Sixth Amendment right to effective assistance of counsel.

**Supporting Facts:** Ludwick requested Appellate Counsel raise the underlying claim. Appellate Counsel advised Mr. Ludwick that the errors relied on information outside the record. Appellate Counsel advised Mr. Ludwick to raise the errors on his 26 (B) if he disagreed.

5

Appellate Counsel's failure to raise the claims on direct appeal was deficient and caused the claims to be unpreserved for later review because the Appellate Court applied the procedural bar of res judicata, which was the exact argument Ludwick made to Mr. Hersch. The underlying claim of this ineffective assistance of Appellate Counsel claim is that the Prosecutor twice elicited probably and indisputably false testimony at trial. First, Detective Antinore's testimony was indisputably false. The video of the interrogation clearly impeaches the Detective's testimony. On direct examination, Tr. At pg. 356 lines 10-21,

Q: Did you speak with the defendant?
B. I did, yes.
Q. And can you give a synopsis of that interview?
A. So, the interview was rather brief. Um, I spoke with Aaron at the Sheriff's office and we started just with normal conversation but I quickly explained that we were there to talk about his romantic relationship with N.L. He nodded his head uh giving a nonverbal que [sic] that he understood what I was talking about, when I asked him if he understood what I was talking about.
Q. And did that end the conversation?
Pg. 357 line 1, A: It ended shortly thereafter, yes.

The second instance of elicitation of false testimony is the testimony of Mrs. Fauber. Tr. At Aug. 12, 2021 pg. 335 lines 13-22 and pg. 336 lines 1-6.

Q: Based on what Kylie told you what did you do?
A: Well as I said I asked her a few questions about the situation. Um, and then I called the school principal um to report this information. And um, of course Kylie did not want me to do that. But I felt as a parent having information like that it would be important to notify somebody so that it could be looked into.
Q: So, who at the school do you, did you speak with if you remember?
A: Uh, the principal, Dee Miller.
Q: Now that was when the girls were in the fourth grade?
A: Yes.
The Prosecutor knew Mrs. Fauber's testimony was indisputably false because of Dee Miller's statement to the Detective, the police report entered on March 23, 2021, docket item 19(C)(1). The report states, "On Tuesday February 23, 2021 I spoke again with Ms. Dee Miller of Fairfield School District. Ms. Miller reported that she did research whether any sexual abuse allegations were reported to the

6

school district regarding N.A.L. and found that an elementary school teacher (Ms. Lorrie Russel) would have been the teacher who the allegations were reported at the time." Mrs. Miller clearly had no knowledge of this as Mrs. Fauber contends.

The Prosecutor also deceived the Court in the May 5, 2021, hearings stating,

Court: …the issue is are there records there that show there was some sort of report?
Collins: That's what I am saying, they didn't do anything, so there's not.
Court: Um, so how do we, so how do they know it was reported then if there is no records?
Collins: The teacher remembers it.
Court: A teacher remember it. Okay.
Collins: Yeah.

The video entered into discovery August 5, 2021, also show [sic] that Fauber's testimony simply is not true. N.L. states, "How could I have told [inaudible] I couldn't even tell my own mom." Trial Counsel, presented the video in his arguments for, motion to suppress the State's witnesses.

The hearing was held on August 11, 2021. Six days after the defense received the video. The Prosecutor knew the exculpatory value of the video and tactically entered it as close to trial as possible. [sic].

**Ground Four**: **Ineffective Assistance of Appellate Counsel.**

Appellate Counsel refused to claim that – the Prosecutor's comments during closing were improper and prejudicial, this failure denied Ludwick of his right to effective assistance of counsel in his first appeal as of right, a violation of the Sixth Amendment. The comments rose to the level of prosecutorial misconduct and plain error. [sic].

**Supporting Facts:** The Prosecutor's closing was rife with improper comments. The improprieties include vouching, denigration, misrepresenting evidence, improper emotional pleas, accusations of uncharged crimes, unsupported allegations of lying, and more.

7

Tr. at Aug 13, 2021, page 90 lines 9-13 (attack on the defense theory and Defense Counsel). Page 90 lines 13-16 (misrepresenting the evidence), page 90 lines 16-22 (misrepresent facts in evidence and misleading the jury), page 91 lines 1-4 (misrepresent facts in evidence), page 91 lines 20-22 (evidence not in the record), page 94 lines 3-17 (denigration of the defense theory and bolstering), 95 lines 7-20 (misrepresenting facts in evidence and vouching), page 96 lines 18-22 (vouching and misleading), 97 lines 10-13, page 97 lines 13-22 and page 98 lines 1-3 (appealing to the sympathy of the jurors while bolstering credibility), page 98 lines 4-10 (bolstering credibility), page 98 lines 11-22 (attacks on the defendant and denouncing of credibility), continued to page 99 lines 1-12 (bad character arguments), page 100 lines 5-12 and page 100 lines 12-17 (belittling testimony, misrepresenting facts, asserting her own personal beliefs and fabricating evidence, page 101 lines 5-10 (improper credibility determinations), page 101 lines 10-22 continuing on page 102 lines 1-12 (misrepresenting facts), page 102 lines 9-12 (misrepresentative arguments of personal belief), page 103 lines 10-22 and continued to page 104 lines 1-19 (it is improper to argue that counsel is attempting to misled the jury), page 118 lines 6-8 (fabricating evidence), page 119 lines 7-14 (emotional plea to the jury, an appeal indicating it was their civic duty to convict and it was also an appeal to prevent the commission of future crimes).

The Prosecutor continually referenced uncharged rapes. Throughout the trial it was stated numerous times that N.L. was raped from age of six to fourteen. This represents a period of eight years. The five indicted charges were rape each year for the ages of 6, 7, 8, 9, and 14. The Prosecutor made multiple credibility determinations. The most egregious being, Tr. at Aug 13, 2021 page 101 lines 5-10, "Honestly, again no one has more interest or bias in this case than this man right here. He is the person with the motive to lie. And perjury it's just not that big of a deal to a child rapist." The Prosecutor made multiple arguments that Ludwick should be found guilty because of his bad character. Tr. at Aug. 13, 2021 page 99 lines 6-12, "Poor Aaron. He even compared himself to his friends who have no families. And honestly, it's not that far of a leap for him to do that because he doesn't look at Marni, N.L. and M.L. as family. They are possessions, they are objects."

The Prosecutor repeatedly, appealed to the emotions of the jury with inflammatory remarks of personal beliefs. The Prosecutor also resorts to denigration of Defense Counsel, the defense theory and the Defendant. The Prosecutor closes her arguments with the

8

presentation of a known falsehood and histrionic statement imploring the jury to do their duty to not be part of the system that fails N.L. again. To stop the rapes today, implying Ludwick will commit future crimes. The Prosecutor did not make a single or a few improper comments but numerous that painted Ludwick in the worst light possible, while arguing that the State's witnesses were dispassionate, believable and disinterested. [sic]

**GROUND FIVE: Cumulative error**. When a defendant shows that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair, he must receive a new trial. The cumulative effect of both Trial and Appellate Counsel's errors resulted in the violation of Ludwick's Sixth Amendment rights.

**Supporting Facts:** The combined effect of the errors at trial and on appeal rendered the trial and appeal process unfair. Improper admission of other acts evidence, plus Counsel's failure to impeach the credibility of two of the State's key witnesses, plus two *Napue* violations, plus improper comments during closing, increases the probability that the combination of prejudices amounted to an unfair trial. The failure to acknowledge the cumulative effect of said errors is also a denial of due process of law rendering the appeal process itself unfair. This review is the first instance that all of the trial errors are viewed in totality. The State process only reviews the errors piecemeal. [sic]

(Petition, ECF No. 1, PageID 6-18).

Respondent concedes that Ludwick has fairly presented his first four grounds for relief to the Ohio courts and defends the Fifth Ground as non-cognizable (Return, ECF No. 7, PageID 508).

Petitioner's Amended Traverse is 118 pages long. He begins that document with an apology for its length, but no such apology is necessary. The Magistrate Judge appreciates that Petitioner has been sentenced to life imprisonment for crimes he asserts he did not commit and understandably wishes to present a strong case for issuance of the writ.

That said, there are many statements of fact in the Amended Traverse for which no record citation is offered. Already on page 2, for example, he asserts:

> An example of a claim that could have been raised through the post-conviction relief petition process was that, Trial Counsel failed to investigate and impeach Kylie Fauber, who testified that N.L. was not allowed to have a date for her sophomore homecoming dance. The Petitioner requested, at the first meeting after receiving discovery, that Ring subpoena N.L. and Marnie Gimeno's Facebook photos from 2019- 2021. A picture is worth a thousand words. N.L. had a date for her sophomore homecoming dance. In fact, N.L., her date and Marnie went to the Fauber's home the day of homecoming and took several group photos inside and outside the Fauber residence. Not only did N.L. attend her own homecoming dance, with a date, but she also attended the White Oak High School Homecoming Dance, with a date. The White Oak dance was just a few weeks after the N.L.'s school's homecoming dance. Kylie Fauber lied about numerous things at trial but a few simple photos would have easily impeached this false testimony and cast doubt on Kylie Fauber's credibility.

(Amended Traverse, ECF No. PageID 1402). So far as the Magistrate Judge is aware, there is no evidence in the State Court Record supporting these factual allegations. If there is, Petitioner has not provided any citation to where that evidence appears in the record, despite the direction in the Order for Answer to provide such citations. As to the truth of these factual assertions, Petitioner now presents no evidence which this Court can consider; even if he had sworn to the truth of the facts in this paragraph, the Court would be precluded from considering them because we are limited to the record that was before the Ohio courts. *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

The example just given is only the first of many. At PageID 1403, Ludwick speculates that his daughter has an Oedipus Complex which leads her to imagine things. That is not sworn testimony, much less a competent statement, given that Petitioner has not been shown to be a qualified psychologists or psychiatrist. See Fed. R. Evid. 702 concerning expert testimony.

Factual statements in the Amended Traverse that are not supported by record citations must be ignored.

## Analysis

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Ludwick asserts he received ineffective assistance of trial counsel when his trial attorney did not present "an alibi defense and did not impeach the Prosecution's key witness', N.L. (accuser's), known false testimony."

As Petitioner acknowledges, the governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective-assistance-of-counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

11

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-

> probable-than-not standard is slight and matters "only in the rarest
> case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The
> likelihood of a different result must be substantial, not just
> conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Ludwick acknowledges he first presented this claim to the Highland County Court of Common Pleas in his petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court rejected the petition, holding that the attached affidavits would not have supported an alibi defense, did not contradict anything the victim had testified to, and would probably have been inadmissible (Decision and Entry, State Court Record, ECF No. 6, Ex. 23, PageID 343-44).

On appeal, the Fifth District Court of Appeals rejected this claim, holding the trial court:

> [P]roperly determined that substantive grounds for relief did not
> exist. The affidavits Ludwick contends were "alibis," were
> statements from friends or neighbors who claimed that during the
> times they visited Ludwick or were around him, they did not witness
> abusive· behavior by Ludwick towards the victim. The trial court
> correctly held that such statements do not constitute "alibis," nor
> would they be relevant impeachment evidence.

(Decision and Entry, State Court Record, ECF No. 6, Ex. 29, PageID 428).

Ludwick contends this is an unreasonable determination of the facts because the victim's testimony on cross-examination was that neighbor adults would not be coming into the apartment where she lived with her mother and Ludwick. Indeed, she said, "No one would usually come to our house." (Trial Tr., ECF No. 8, PageID 698).

Jameson Carpenter provided an affidavit in which he swore he was Ludwick's neighbor from April 2009 until November 2011 and would "visit[ ] his house as often as 5-6 times a week." (Affidavit, State Court Record, ECF No. 6, PageID 311).

Nathaniel Peck avers in his Affidavit that he "would visit with neighbors outside the apartment, Aaron would be most of time/quit[e] often at the apartment complex, and when he moved I go to his place 2 to 5 times a week. I believe I was considered friend of the family. We would help each other work on whatever, such lawn, [c]ars, his motorcycle, computers, and odd end things." (Affidavit, State Court Record, ECF No. 6, Ex. 21, PageID 312).

In his Affidavit Travis Lowe says nothing about visiting Ludwick except that he never witnessed any signs of abuse. (Affidavit, State Court Record, ECF No. 6, Ex. 21, PageID 314). Ludwick's cousin Donald Davy swore when Ludwick lived in Leesburg, he was "always outside with his neighbors." (Affidavit, State Court Record, ECF No. 6, Ex. 21, PageID 315).

At the time the victim gave the testimony Ludwick relies on, she had just been asked about playing with neighbor children and had testified she did regularly, but they were never allowed in the house. (Trial Tr., ECF No. 8, Ex. 21, PageID 697). The attacked testimony includes her statement quoted above that no one would usually comes to the house.

Given the context, the witness may well have understood the question was about neighbors coming **into** the house. Her answer is not inconsistent with the affidavits speaking about frequent gathering outside. In any event, the possible inconsistency is not such as would have undermined the victim's testimony to any significant extent. She testified to repeated sexual abuse over a period of ten years. Testimony by neighbors that they never witnessed any abuse would have added very little, even assuming it had overcome a relevance objection.

It was not deficient performance to fail to call these witnesses[3]. Ground One should therefore be dismissed.

---

[3] In any event Ludwick does not provide a record citation to any place where he claims he told his trial attorney about these witnesses.

**Ground Two:  Ineffective Assistance of Appellate Counsel**

In his Second Ground for Relief, Petitioner contends he received ineffective assistance of appellate counsel when his appellate attorney did not raise as an assignment of error his trial attorney's failure to impeach two of the State's witnesses, Detective Vincent Antinore and Cheryl Denise Fauber.

Ludwick identifies this claim as having been presented to the Fourth District Court of Appeals as omitted assignments of error in his App. R. 26(B) Application for Reopening.  The Fifth District decided the relevant claims as follows:

> **3. Third Assignment of Error:** "Appellate counsel rendered ineffective assistance and was deficient for not raising the error of ineffective assistance of trial counsel, when Mr. Ring failed to impeach Detective Antinore's testimony,:"
>
> Here, Mr. Ludwick has again attached page 356 of the trial transcript in support of his argument. He claims that his trial attorney "failed to present the truth" and in that the "prosecutor did elicit false testimony" regarding the detective's statement regarding the nodding of appellant's head. Mr. Ludwick's sworn statement indicates that "sound trial strategy and tactics would have been to present the video of the interrogation."
>
> In matters regarding trial strategy, the Supreme Court of Ohio has held:
>
>> Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.
>
> *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 977 (1995).

Here we find trial counsel's choice not to present the video of the interrogation was part of his trial strategy and counsel's actions did not deviate from the standard of reasonableness. Therefore, we do not find any "genuine issue" as to whether there is a "colorable claim" of ineffective appellate counsel as it relates to appellant's third assignment of error.

**4. Fourth Assignment of Error:** "Appellate counsel for Mr. Ludwick rendered ineffective assistance by not arguing trial counsel rendered ineffective assistance by failing to adversarially test the false claim of Cheryl Denise Fauber."

Mr. Ludwick argues "statements given to police and school records show her statements were false." As stated above, the mere absence of a school record is insufficient to establish that the testimony given was false. There is no evidence in the record to support his allegation that Fauber's testimony was false. Furthermore, the state argues that trial counsel did in fact cross examine Fauber regarding the report, thus engaging in the adversarial process. Therefore, we do not find any "genuine issue" as to whether there is a "colorable claim" of ineffective appellate counsel as it relates to Mr. Ludwick's fourth assignment of error.

(Judgment Entry, *State v. Ludwick*, State Court Record ECF No. 6, Ex. 17, PageID 272-73).

The Fifth District was thus the last state court to consider these claims on the merits because the Ohio Supreme Court declined to exercise jurisdiction. To prevail in habeas corpus then, Ludwick must show that the Fifth District's decision was an objectively unreasonable application of United States Supreme Court precedent. The relevant precedent is *Strickland, supra*, and its progeny. *Strickland* applies equally to claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

Ludwick argues the Fifth District "improperly constructed the strategic defense because defense Counsel did not testify at any post-trial hearings." (Amended Traverse, ECF No. 35, PageID 1433). But there is no Supreme Court precedent conditioning deference to trial counsel's

tactical or strategic[4] decisions on whether trial counsel testified in a post-conviction proceeding and claimed to have made a decision entitled to deference.

Ludwick's sole citation is to *Davis v. Lambert*, 388 F.3d 1052 (7th Cir. Nov. 4, 2004). In that case the habeas petitioner claimed he had seven witnesses whom his attorney refused to interview or present. In granting relief, the Seventh Circuit emphasized the lack of any evidence of what the seven witnesses would have testified to and granted Davis an evidentiary hearing[5] in the District Court. *Davis* was a murder case in which the defense was self-defense and at least one of the witnesses counsel declined to call was an eyewitness. Although the Seventh Circuit recognized the presumption of effectiveness, it found the presumption could not be honored in that case.

The Seventh Circuit did not hold testimony by defense counsel was necessary in every ineffective assistance of trial counsel case to sustain the presumption of effectiveness nor did it cite any Supreme Court holding to that effect. Rather, it applied the law on presumption of effectiveness on a case-by-case basis. In this case the question is not whether trial counsel was ineffective for failing to call key witnesses, but how he chose to impeach the State's witnesses.

In rejecting this claim of ineffective assistance of appellate counsel, the Fifth District relied on *State v. Carter, supra,* in which the Ohio Supreme Court followed U.S. Supreme Court precedent requiring evaluation of trial counsel's performance to be "highly deferential." *See Strickland, supra; Harrington, supra.* Recall, also, that the issue of ineffective assistance of trial counsel was before the Fifth District only as an underlying claim to an ineffective assistance of

---

[4] While both terms are used to describe trial attorney conduct entitled to deference, the choice of one method of impeachment over another seems more tactical than strategic in the broader sense of those terms. For comparison purposes, the choice of whether to offer an alibi defense seems strategic whereas the choice of how to impeach a given adverse witness seems tactical.

[5] *Davis* was decided before the United States Supreme Court virtually banned evidentiary hearings in habeas corpus in *Pinholster, supra.*

appellate counsel claim. The import of the Fifth District's decision is that it was not ineffective for appellate counsel to fail to raise a claim of ineffective assistance of trial counsel which would not have been successful.

In sum, the Magistrate Judge concludes the Fifth District's decision as to the claims raised in Ground Two is not an objectively unreasonable application of clearly established Supreme Court precedent and therefore Ground Two should be denied.

**Ground Three: Ineffective Assistance of Appellate Counsel**

In Ground Three Ludwick again asserts his appellate attorney provided ineffective assistance when he failed to raise as an assignment of error the asserted prosecutorial misconduct of eliciting false testimony from Detective Vincent Antinore and Cheryl Denise Fauber.

Ludwick presented this claim as two omitted assignments of error in his 26(B) application and the Fifth District decided the on the merits as follows:

> **First Assignment of Error:** "Appellate counsel rendered ineffective assistance by failing to raise the claim of prosecutorial misconduct by Prosecutor. Anneka Collins. The prosecutor elicited false testimony of Detective Antinore."
>
> In support of this assignment of error, Mr. Ludwick attached page 356 of· the trial transcript as an exhibit to his application. This portion of the transcript contains the testimony of Detective Antinore where he testified that by nodding his head, appellant gave a nonverbal cue that he understood what the detective was talking about. Mr. Ludwick claims that the detective's testimony was false. There is no evidence in the record to support this claim. Therefore, we do not find any "genuine issue" as to whether there is a "colorable claim" of ineffective appellate counsel as it relates to Mr. Ludwick's first assignment of error.

> **Second Assignment of Error:** "Appellate counsel failed to render effective assistance by not raising the claim of Prosecutorial Misconduct by Prosecutor Anneka Collins. Prosecutor Collins elicited false testimony from Cheryl Denise Fauber multiple times."
>
> In support of this assignment of error, Mr. Ludwick claims that the testimony is false because the school did not have a record of Fauber calling and reporting information to the school. The mere absence of a school record is insufficient to establish that the testimony given was false. There is no evidence in the record to support Mr. Ludwick's allegation that Fauber's testimony was false. Therefore, we do not find any "genuine issue" as to whether there is a "colorable claim" of ineffective appellate counsel as it relates to appellant's second assignment of error.

(Judgment Entry, *State v. Ludwick*, State Court Record ECF No. 6, Ex. 17, PageID 271-72).

Ludwick argues this decision denies his claim on the basis of "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" in violation of 28 U.S.C. § 2254(d)(2)(Amended Traverse, ECF No. 35, PageID 1433, *et seq.*). Petitioner claims that the absence of a record at the school of any report of abuse from Fauber proves that her testimony to the effect that she made such a report is false. Moreover, he asserts that the prosecutor's presentation of Fauber's testimony is a violation of his due process rights as recognized in *Napue v. Illinois*, 360 U.S. 264 (1959).

Petitioner also claims Detective Antinore's testimony that Ludwick nodded his head in response to the question whether he understood what he and Antinore were discussing was tantamount to a confession. Here again the Fifth District found that there was no evidence in the record to support the claim that Antinore perjured himself. Antinore did not ask Ludwick if he was guilty, but if he understood what they were talking about. A nod of the head in response to such a question is universally understood in American culture as the equivalent of a verbal "yes."

Ludwick has not cited any place in the record that shows Antinore did not see him nod at that point in time.

The Sixth Circuit has held "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell,* 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman* at 766, *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). Mere inconsistencies in testimony do not establish the knowing use of perjured testimony. *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

The Magistrate Judge agrees with the Fifth District's evaluation of this claim. The absence of a record of a report does not prove the report was not made or that the person testifying to making the report is perjuring herself, much less that the attorney eliciting the testimony knows it is perjury. The absence of a record of any event is of course useful evidence to impeach testimony that the event was reported to someone, but it is not conclusive proof that the event did not happen. Trial attorneys must often rely on the testimony of live witnesses which is subject to error from misperception or forgetfulness or even bias. Opposing attorneys are charged with presenting to a

20

jury these frequent sources of error, as defense counsel attempted to do here by showing there was no record of such a report. But it does not serve the cause of justice to elevate every claim that a witness was wrong to the level of perjury.

Petitioner asserts that *Napue* claims must be evaluated under the Supreme Court's recent decision in *Glossip v. Oklahoma,* 604 U.S. ___, 145 S. Ct. 612, 221 L. Ed. 2d 90 (Feb. 25, 2025), and the Magistrate Judge agrees. But *Glossip* did not change the law in a way relevant to this case.

At ¶ 95 of the Amended Traverse Petitioner asserts: "The issue is not the consistency of the testimony but the conflict with the facts." That is a good summary of his argument but simply is not the test for a *Napue* violation. Rather, the precedent requires known solicitation of knowing perjury which Petitioner's evidence does not prove.

Ground Three should be dismissed.


**Ground Four: Ineffective Assistance of Appellate Counsel**


In his Fourth Ground for Relief, Petitioner asserts he received ineffective assistance of appellate counsel when his direct appeal attorney refused to assert prosecutorial misconduct in closing argument.

This was also included as an omitted assignment of error in Petitioner's 26(B) Application and the Fifth District decided it as follows:

> **5. Fifth Assignment of Error:** "Appellate counsel rendered ineffective assistance by failing to raise the improper comments by the Prosecutor in closing."
>
> Here, Mr. Ludwick cites to numerous instances in the transcript where he categorizes the prosecutor's comments as misleading,

vouching, improper, and denigrating to counsel. The state argues that trial counsel did not object to any of the statements and that failure to object to alleged improper statements made by a prosecutor during closing arguments waives all but plain error. Trial counsel's failure to object may have been part of his trial strategy not to draw more attention to the comments during closing argument. Nonetheless, even if the prosecutor's arguments or remarks were improper they were not outcome-determinative so as to constitute plain error. Appellate' counsel may have reasonably viewed raising this assignment of error as futile. Therefore, we do not find any "genuine issue" as to whether there is a "colorable claim" of ineffective appellate counsel as it relates to Mr. Ludwick's fifth assignment of error.

(Judgment Entry, *State v. Ludwick*, State Court Record ECF No. 6, Ex. 17, PageID 273).

Consideration of the merits of Petitioner's Fourth Ground for Relief is barred by his procedural default in presenting this claim to the state courts. As the Fifth District found, his trial attorney did not object to the closing argument and therefore appellate review could only be under the plain error doctrine. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

A procedural default can be avoided by showing excusing cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72 (1977). Petitioner claims this particular procedural default is excused by his trial attorney's ineffectiveness in failing to object (Amended Traverse, ECF No. 35, PageID 1459). However, before ineffective assistance of trial counsel can be relied on as excusing cause, that claim must have been submitted properly to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007). Because counsel's failure to object was apparent on

the face of the appellate record, Ludwick was obliged to raise this claim on direct appeal or be later barred by *res judicata*.  *State v. Perry,* 10 Ohio St. 2d 175 (1967).  Failure to make a contemporaneous objection is not raised as an assignment of error on direct appeal.  (See Appellant's Brief, State Court Record, ECF No. 6, Ex. 7).

Petitioner's Fourth Ground for Relief should be dismissed as procedurally defaulted.


**Ground Five:  Cumulative Error**


In his Fifth Ground for Relief, Petitioner argues the errors in the trial and appellate courts should be accumulated so as to entitle him to habeas corpus relief.  Respondent asserts cumulative error is not a cognizable claim in habeas corpus:

> Post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v. Robinson,* 134 S. Ct. 110 (2013) quoting *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010)(quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).

(Return of Writ, ECF No. 7, PageID 524).

Petitioner asserts cumulative error is a cognizable ground for relief.  He principally relies on *United States v. Romano*, 2023 U.S. Dist. LEXIS 46051, 2023 WL 2552517 (S.D. Ohio March 17, 2023).  But *Romano* is not a habeas corpus case, but rather reports Judge Watson's granting of a new trial in a federal criminal case.  *Romano* does not contradict the precedent cited by Respondent.  *Grant v. Trammell,* 727 F.3d 1006 (10th Cir. 2013), cited for supposed support from then-Judge Gorsuch for recognizing cumulative error actually held errors could not be accumulated even to vacate a death sentence.

Petitioner argues that *Moore v. Parker, supra,* is itself a denial of due process (Amended Traverse, ECF No. 35, PageID 1503). The place to make that argument is in the Supreme Court of the United States, which denied certiorari in the *Moore* case *sub. nom Moore v. Kentucky*, 494 U.S. 1060 (March 26, 1990). This Court is bound to follow the published decisions of the Sixth Circuit Court of Appeals. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987). See *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U. S. 477, 484,  (1989).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 4, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report

and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #