# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

AARON D. LUDWICK,

       Petitioner,   :   Case No. 1:24-cv-51

- vs -                    District Judge Susan J. Dlott
                                       Magistrate Judge Michael R. Merz

TIM SHOOP, Warden, Chillicothe
  Correctional Institution,

                                          :

       Respondent.

## DECISION AND ORDER ON THE MERITS

      This case is before the Court for decision on the merits. Petitioner Aaron D. Ludwick has filed a Petition for Writ of Habeas Corpus ("Habeas Petition") challenging his conviction for four counts of sexual conduct with a minor less than thirteen years old and one count of sexual conduct with another by force or threat of force. (Doc. 1.) The victim was his daughter. Magistrate Judge Michael R. Merz, to whom this case was referred under 28 U.S.C. § 636(b), has filed a Report and Recommendations ("R&R") recommending the Habeas Petition be dismissed with prejudice, to which Ludwick has objected. (Docs. 37, 44, 48.) Respondent did not file a response. The Amended Objections are ripe for consideration.

      As required by 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the Court has reviewed the R&R *de novo* with particular attention to those portions objected to by Ludwick. For the reasons that follow, the Court **OVERRULES** Ludwick's Amended Objections and **ADOPTS** the R&R.

1

**Overview of the AEDPA**

Ludwick filed his Habeas Petition after April 24, 1996 so it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas petitioner must exhaust all remedies available to him in state court before filing a habeas petition. 28 U.S.C. § 2254(b)(1)(A). A state court's findings of fact "shall be presumed to be correct" and can be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). When the state court has made a determination on the merits as to any issue, the AEDPA requires federal courts to respect the merits determination unless it resulted in a decision that: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §§ 254(d)(1)–(2); *see also Williams v. Taylor*, 529 U.S. 362, 402–403 (2000). Clearly established federal law is based on the holdings of Supreme Court cases, not the dicta. *White v. Woodall*, 572 U.S. 415, 419 (2014).

Importantly, a § 2254(d)(1) review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S 170, 181 (2011). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 184; *see also Bray v. Andrews*, 640 F.3d 731, 737 (6th Cir. 2011) (applying *Pinholster*). Significantly, § 2254(d) "applies even where there has been a summary denial." *Pinholster*, 563 U.S. at 187. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any

2

indication or state-law procedural principles to the contrary." *Harrington v. Richter,* 562 U.S. 86, 99 (2011).

**Grounds for Relief in the Habeas Petition**

Ludwick pleads five grounds for relief in his Petition for Writ of Habeas Corpus ("Habeas Petition"): ineffective assistance of trial counsel (First Ground), ineffective assistance of appellate counsel (Second, Third, and Fourth Grounds), and cumulative error (Fifth Ground). (Doc. 1.) Respondent conceded that Ludwick fairly presented his first four grounds for relief to the Ohio courts and defended the Fifth Ground as non-cognizable. (Doc. 7, PageID 508.)

**First Ground: Ineffective Assistance of Trial Counsel**

Ludwick asserts in his First Ground for Relief that his trial attorney provided ineffective assistance when he failed to investigate, preserve, and present an alibi defense, and failed to impeach the victim's known false testimony. Ludwick presented his First Ground to the state court in his petition for post-conviction relief. (Doc. 6, PageID 305–320) The Magistrate Judge concluded that the Ohio appeals court's rejection of the claim was not an unreasonable application of the governing standard for ineffective assistance of trial counsel claims, *Strickland v. Washington,* 466 U.S. 668 (1984), and was not based on an unreasonable determination of the facts. He recommended the First Ground be dismissed on the merits. (Doc. 37, PageID 1522–1525.)

The *Strickland* standard for ineffective assistance of counsel requires two showings: (1) counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability that but for counsel's error the result of the proceeding would have been different. *Hinton v. Ala.*, 571 U.S. 263, 272–273 (2014). As to the first showing, "a court must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable

3

professional assistance." *Strickland*, 466 U.S. at 689. When a state court already decided the ineffective assistance of counsel claim on the merits, the district court's review must be doubly deferential to "counsel's strategic choices during the trial." *Hartman v. Yost*, 146 F.4th 463, 473 (6th Cir. 2025).

Ludwick raises five objections to the R&R's discussion of the First Ground for Relief. In Objection 1, Ludwick asserts that the Magistrate Judge erred in concluding that that the victim did not commit perjury at trial. (Doc. 48, PageID 1626.) The Ohio court of appeals summarized the victim's trial testimony as follows:

> {¶5} N.L. testified that when she was six years old, in first grade, and living in an apartment with her father, Aaron Ludwick, her mother, M.G., and a younger sister, Ludwick would make N.L. sit on a blue recliner chair and he would digitally penetrate her vagina and have her rub his penis. The sexual abuse continued several times a week, escalating in nature until she turned 14 years old. When N.L. was seven, Ludwick put his penis inside her vagina. She testified that she cried and asked him to stop. She would stare at a gray console television in the room while the abuse occurred. When she was eight years old and in third grade, Ludwick put his penis inside her anus. She testified that she hated anal sex but that Ludwick would ejaculate more quickly so the ordeal would be over more quickly. In fourth grade, when she was nine, the family moved from the apartment into a house. When they moved to that house, Ludwick forced N.L. to perform oral sex on him and also masturbate him with her hand.
>
> {¶6} N.L. testified that when she was in the fourth grade, she went to a sleepover at a friend's house with several other girls. She said she and another girl were touching each other under their pants and humping. The other girls asked about their actions and N.L. told them, "that's what my dad made me do and that I would lay with him until white stuff came out and then we'd be done." She said the discussion came up again at the school lunch table a few days later and she again told them that her dad "would make me lay with him until white stuff came out." Two of the girls present at the sleepover and the lunch table discussion testified that they recalled the incident and lunch discussion and N.L. told them, "She has to lay naked with him [her dad] until white stuff comes out and then she's done." And, "[N.L.] mentioned that her dad made her

4

> lay in bed with her naked. * * * she didn't know if that was something we all had to do with our dads or um if that was unnormal." One of the girls testified that she went home after school that afternoon and told her mother about N.L.'s comments. That mother testified that after her daughter told her about the lunch conversation, she called a school administrator and reported the information. She did not know what the school did after she reported it, but learned prior to trial that the school never followed up on it.
>
> {¶7} N.L. testified that the sexual abuse continued when she was 10 and 11 years old and in the fifth and sixth grades and that most often her father forced vaginal sex on her. She testified that her father had a bag that contained a corset and skirt and she was required to wear that during sex. She also testified that her father took her to purchase thong underwear for her 14th birthday, which he forced her to wear during sex. N.L. testified that her father had a video camera that he used to record their anal sex when she was approximately 12 years old.
>
> {¶8} N.L. testified that the sexual assaults stopped in 2018 when she was 14 and started menstruating. However, there was one additional final time when she was 14, during which Ludwick wore a condom and forced anal sex on her.

*Ohio v. Ludwick*, 2022-Ohio-2609 (Ohio App. 4th Dist. Jul. 26, 2022). N.L. did not report the abuse until 2021, several years after the abuse stopped. *Id.*, ¶ 9.

The victim's trial testimony about which Ludwick complains was given on cross-examination after she gave the testimony summarized above. In response to a question about whether adults would come into the apartment where Ludwick lived with the victim and her mother, the victim testified that "[n]o one would usually come to our house." (Doc. 8-1, PageID 697–698.) Ludwick presented four affidavits in his Ohio post-conviction proceedings that he contends would have provided him with an alibi and impeached the victim's testimony. (Doc. 6, PageID 311–314.) He asserts that his trial counsel was ineffective for not calling the affiants to testify as witnesses at trial. The affiants stated on the whole that they visited the Ludwicks' house or apartment, often outside, and that they did not witness him abuse or mistreat his

5

daughter. (*Id.*) The Ohio appeals court in denying post-conviction relief concluded that the proposed witness testimony would not have provided Ludwick with an alibi and would not have been relevant to impeach the victim. (Doc. 6, PageID 427–428, 435–436.) It found that Ludwick's trial counsel was not ineffective for failing to call the affiants to testify at trial. (*Id.*)

The Magistrate Judge observed that the victim may "well have understood" the cross-examination question at issue was limited to people coming **into** the house because the perverse sexual activity to which she testified occurred inside. (Doc. 37, PageID 1525.) The victim did not testify that Ludwick abused her outside or when other people were present in the home. Sexual abusers of children, especially young children, rarely do it in locations where they are likely to be observed. As such, presenting the testimony of the purported impeachment witnesses would not have provided Ludwick with an alibi or established that the victim committed perjury. The Court agrees with the Magistrate Judge that the state appeals court denial of this claim was not based on an unreasonable determination of the facts and was not contrary to clearly established federal law. Objection 1 is overruled.

In Objection 2, Ludwick argues that the Magistrate Judge erred in concluding that the trial counsel's failure to call impeachment witnesses against the victim was prejudicial. (Doc. 48, PageID 1630.) The Court's analysis of Objection 1 applies was well here. Objection 2 is overruled.

In Objection 3, Ludwick objects to the Magistrate Judge's statement that the victim testified to repeated sexual abuse over a period of ten years, because Ludwick was charged with and convicted of five counts spanning five years. (Doc. 48, PageID 1632.) This Objection is meritless. Whether or not the victim should have been allowed to testify about uncharged incidents is a separate issue from whether she did in fact so testify. The Magistrate Judge's

6

finding is roughly consistent with the summary of the trial evidence given by the Ohio appeal court on direct appeal as excerpted above. *Ludwick*, 2022 Ohio 2609 ¶¶ 5–8. Objection 3 is overruled.

In Objection 4, Ludwick objects to the Magistrate Judge's finding that he failed to identify where in the state court record he told his trial attorney about the witnesses he wanted to call to impeach the victim. (Doc. 48, PageID 1632.) Ludwick cites his own affidavit in support of his petition for post-conviction relief. (Doc. 6, PageID 327.) Ludwick stated "I gave Mr. Ring [the trial attorney] the names and contact information of approximately 8 people that I was associated with during the time frame covered by the indictment." (*Id.*) He does not specifically state that he gave Mr. Ring the name of the four people whose affidavits he submitted in support of the petition for post-conviction relief. (*Id.*, PageID 311–314.) However, one affiant, Nathaniel Peck, states that he was supposed to be at Ludwick's trial, but he was unable to attend because he was sick with Covid-19. (*Id.*, PageID 312.) He states that he told "the lawyer" that he was unable to attend. *Id.* That suggests that Mr. Ring knew about Mr. Peck. Again, however, the testimony of these affiants was not likely to undermine the victim's testimony to a significant extent. This objection is overruled.

In Objection 5, Ludwick objects to the Magistrate Judge's recommendation to dismiss the First Ground. (Doc. 48, PageID 1633.) Ludwick objects that "[t]his determination is an unreasonable application at *Strickland* and contrary to *Peoples v. Lafler*, 734 F.3d 503 [6th Cir. 2013]." (*Id.*) In *Peoples* the Sixth Circuit found:

> The only evidence connecting Jesse Peoples to the murder he now serves a life sentence for committing was the testimony of two men who, along with Peoples, occupied a stolen Jaguar where the murder weapon was found. During trial, the prosecutor elicited from these two witnesses known false testimony. Although the entire defense theory was that the two witnesses conspired to point

7

> the finger at Peoples, trial counsel did not use the only hard evidence at his disposal to prove that the two witnesses not only lied, but told the same lie. And he failed to do so despite the fact that Peoples himself found the evidence and told him how to use it.

*Id.* at 506. That is strikingly different from the situation here. Ludwick has not presented specific evidence that he gave his attorney the names of three of the four affiants he later relied on. The affiants' testimony does not show the victim perjured herself or that the prosecutor knew she was perjuring herself. The Court agrees with the Ohio court of appeals and the Magistrate Judge that his trial attorney's failure to call these four witnesses was not ineffective assistance of counsel. Ludwick's Objection 5 is overruled.

The Court will dismiss the First Ground for Relief in the Habeas Petition.

**Second Ground: Ineffective Assistance of Appellate Counsel**

Before stating specific objections on the Second Ground for Relief, Ludwick makes a general objection about how the AEDPA should be applied in this case. Ludwick asserts that "This Court [i.e. the Magistrate Judge in the R&R] made no determination regarding Ludwick's arguments on AEDPA, and its application to grounds two, three, and four." (Doc. 48, PageID 1635.) Ludwick contends that the Court's AEDPA review should not be limited to the evidence submitted in the state court record, because the Ohio appeals court did not decide his ineffective assistance of appellate counsel claims on the merits. This argument does not withstand scrutiny. The Ohio appeals court decided Ludwick's ineffective assistance of appellate counsel claims on the merits in its decision denying Ludwick's application to reopen his appeal under Rule 26(B) of the Ohio Rules of Appellate Procedure. (Doc. 6, PageID 269–275.) The Ohio appeals court found that his claim failed on the merits at the first stage of the *Ohio v. Leyh*, 166 Ohio St. 3d 365 (2022) analysis. "Mr. Ludwick has failed to demonstrate any genuine issue as to whether there is a colorable claim of ineffective appellate counsel pursuant to App.R. 26(B)(5)." (Doc. 6,

PageID 270 ¶ 3.)  It then analyzed in depth the seven assignments of error Ludwick claimed had been omitted from the direct appeal as a result of the ineffective assistance of appellate counsel and found that "**they are without merit** and barred by *res judicata*."  (*Id.*, PageID 274 ¶ 5 (emphasis added).)  If the Ohio appeals court had erred in its conclusion about applying *Leyh*, the Ohio Supreme Court could have corrected that on appeal, but it declined to exercise appellate jurisdiction.  (*Id.*, PageID 304.)

Because the Ohio appeals court plainly decided Ludwick's ineffective assistance of appellate counsel claims on the merits, that decision is entitled to deference under the AEDPA as codified at 28 U.S.C. § 2254(d)(1).  Ludwick's objection to the R&R's handling of this AEDPA issue is overruled.

Turning now to the Second Ground for Relief in the Habeas Petition, Ludwick contends he received ineffective assistance of appellate counsel when appellate counsel did not raise as an assignment of error his trial attorney's failure to impeach two of the State's witnesses, Detective Vincent Antinore and Cheryl Denise Fauber.  At the trial, Detective Antinore testified in part that when he was interrogating Ludwick, Ludwick nodded affirmatively when asked if he understood he was there to be questioned about his "romantic relationship" with his daughter.  (Doc. 8-1 at PageID 897.)  Ludwick contends that this was tantamount to saying that Ludwick confessed to the crime.  Ludwick contends that his trial attorney should have showed the jury the interrogation video to prove that Ludwick did not nod affirmatively.[1]  As to Fauber, she testified at the trial that her daughter told her that the victim said she had to sleep naked with her father when the girls were in fourth grade, and she testified that she reported the same to the school principal.

---

[1] The video of the interrogation is not in the state court record.  The Court has denied in separate Orders Ludwick's request to expand the record to include the video on the basis of *Cullen v. Pinholster,* 563 U.S. 170 (2011).

(Doc. 8-1, PageID 876.) Ludwick contends that his trial attorney should have called the school principal to testify that she did not remember Fauber reporting abuse and that the school had no records of a report of abuse. (Doc. 6, PageID 237; Doc. 18-1, PageID 1164–1165.) The Ohio appeals court denied ineffective assistance of counsel claims regarding Detective Antinore and Fauber in the decision denying his Rule 26(B) application to reopen his appeal. (Doc. 6, PageID 272–273.) The Magistrate Judge recommends denying this claim because the Ohio appeals court decision on the issue was not an objectively unreasonable application of *Strickland*. (Doc. 37, PageID 1526–1529.)

In Objection 1, Ludwick argues again that the Ohio appeals court did not consider this issue on the merits in the order denying the Rule 26 application to reopen. (Doc. 48 at PageID 1640.) This objection is overruled based on the analysis above of the Ohio appeals court decision above and *Leyh*.

In Objection 2, Ludwick objects to the R&R's finding that "Ludwick argues the Fourth District 'improperly constructed the strategic defense because defense Counsel did not testify at any post-trial hearings." (*Id.*, PageID 1642.) However, the R&R's finding about Ludwick's argument is a verbatim quotation from his Amended Traverse (Doc. 35, PageID 1433). In other words, that is the exact argument he made. Objection 2 is overruled.

In Objection 3, Ludwick objects to the finding that "Ludwick's sole citation is to *Davis v. Lambert*, 388 F.3d 1052 (7th Cir. Nov. 4, 2004)." (Doc. 48, PageID 1645.) Ludwick argues in his Amended Objections that he cited "numerous cases." In fact, the only case Ludwick cited in the Amended Traverse about a trial attorney testifying was *Davis*. (Doc. 35, PageID 1433, ¶ 48.) There is no governing precedent known to the Court which holds that a trial tactic can only be found to have been part of a sound trial strategy if the trial attorney testifies in post-conviction to

10

that effect. In numerous cases courts "construct" hypothetical trial strategies to explain attorney choices in order to honor their entitlement to deference and to avoid the 20/20 hindsight which can become involved in evaluating attorney performance.

Ludwick's Objections 4 and 5 challenge the merits of the Magistrate Judge's recommendation to deny the Second Ground for Relief. (Doc. 48, PageID 1645–1647.) Ludwick argues that his trial counsel could have more effectively impeached the prosecution's witnesses. Ludwick here is mostly focused on appellate counsel's failure to argue that Ludwick's trial attorney should have called the school principal to refute Fauber's testimony that she reported the potential abuse by Ludwick of his daughter to the principal. The school had no record of Fauber making such a report of abuse. (Doc. 6, PageID 237; Doc. 18-1, PageID 1164–1165.) The trial attorney did not call the principal to testify or present evidence about the lack of corroborating school records. However, he did ask Fauber on cross-examination the following question: "If the school would have no records of this call, can you explain that?" (Doc. 8-1, PageID 882.) Fauber responded that she did not know what the school did after she made the report. (*Id.*, PageID 883.)

Appellate counsel's failure to raise this issue on the direct appeal was not ineffective assistance of appellate counsel. Ludwick relies on *Peoples v. Lafler*, 734 F. 3d 503, 514 (6th Cir. 2013), for the proposition that "failure to impeach the credibility of key witnesses with known false testimony is an egregious error in a criminal case." *Peoples* is distinguishable from this case, however. In *Peoples*, the defendant gave defense counsel police reports directly contradicting two key government witnesses who testified that the defendant was the driver of a stolen vehicle and therefore sitting closest to the murder weapon on the driver's side floorboard. 734 F.3d at 507. The police reports indicated that one of the accusing government witnesses was

11

driving the vehicle. *Id.* Defense counsel failed to use the police reports to impeach the testimony of the witnesses.

Here, the purported impeachment evidence would not have contradicted Fauber in a material way. Neither the absence of a school record corroborating Fauber's testimony that she reported the abuse, nor the principal's expected testimony that she did not remember a report by Fauber several years earlier, necessarily proves that Fauber's testimony was false. Whether Fauber reported the abuse to the school is not directly relevant to the matter of whether Ludwick was guilty. Nonetheless, defense counsel did suggest in cross-examination that school records did not corroborate Fauber's testimony on that point. Moreover, Fauber's key testimony that the victim told her daughter when they were in fourth grade that Ludwick made her sleep next to him naked was corroborated by her daughter's trial testimony. (Doc. 8-1, PageID 865–866, 876.) In sum, like the Magistrate Judge, this Court does not find unreasonable or contrary to clearly established law the Ohio appeals court decision that it was not ineffective for appellate counsel to fail to raise a claim of ineffective assistance of trial counsel that would have been unsuccessful.

As to the Detective Antinore claim, Ludwick asserts that it was error for his appellate counsel not to have argued that trial counsel was deficient for failing to present the police interrogation video to impeach Detective Antinore's testimony. Ludwick asserts that the interrogation video would have proved Detective Antinore lied when he testified that Ludwick nodded affirmatively that he understood they were there to discuss Ludwick's "romantic relationship" with his daughter. (Doc. 8-1, PageID 897.) The Ohio appeals court in the decision denying the Rule 26(B) application found that it was reasonable trial strategy to not present in the interrogation video as impeachment evidence. (Doc. 6, PageID 272.) It never credited or

12

acknowledged Ludwick's argument in his Rule 26(B) application that Detective Antinore essentially testified that he had elicited a confession from Ludwick. (*Id.*, PageID 212.) Rather, the Ohio appeals court described Detective Antinore's trial testimony to simply be that Ludwick "gave a nonverbal cue that he understood what the detective was talking about." (*Id.*, PageID 271.) The Ohio appeals court's holding that trial counsel acted reasonably in not presenting the interrogation video and appellate counsel acted reasonably in failing to assign error to trial counsel's strategic decision flows naturally from that factual finding. Ludwick has not met his burden to prove this decision was a contrary to or an unreasonable application of *Strickland*. Objections 4 and 5 are overruled.

In Objection 6, Ludwick calls the Magistrate Judge's decision applying *Cullen v. Pinholster,* 563 U.S. 170 (2011), to this case "absurd," relying on *Arita v. United States,* 470 F. Supp. 3d 663, 685 (S.D. Tex. Jun. 30, 2020). (Doc. 148, PageID 1649.) *Arita* does not cite *Pinholster* and is not a habeas corpus case. Ludwick again argues the Ohio appeals court decision denying his Rule 26 application to reopen was not on the merits. That argument is untenable for the reasons given above. Objection 6 is overruled.

The Court will dismiss Second Ground for Relief in the Habeas Petition.

**Ground Three: Ineffective Assistance of Appellate Counsel**

In the Third Ground for Relief, Ludwick again asserts his appellate attorney provided ineffective assistance, this time when he failed to raise as an assignment of error the asserted prosecutorial misconduct of eliciting false testimony from Detective Vincent Antinore and Cheryl Denise Fauber. The facts and trial testimony underlying this claim were discussed at length in regard to the Second Ground for Relief. The R&R recommends denying this claim because the Ohio court of appeals determination in the decision denying the Rule 26(B)

13

application that the Ludwick had not proved the underlying testimony was perjured was a reasonable determination of the facts in light of the evidence. (Doc. 37, PageID 1529–1532.)

In Objection 1, Ludwick reiterates his argument that the Ohio appeals court did not address on the merits his ineffective assistance of appellate counsel claims. (Doc. 48, PageID 1650.) This argument fails for the reasons stated above.

In Objections 2 and 7, Ludwick again turns to his claim that witness Fauber must have been lying about reporting the Ludwick's abuse of his daughter to the school because many years later the principal could not find any record of such a report or remember it. (Doc. 48, PageID 1651, 1657.)[2] This objection misses the point. As explained above, the fact that two witnesses have differing recollections of events that occurred in the distant past does not prove that one of them is lying. And Fauber's key testimony that the victim told her friend that she had to sleep naked with her father when the girls were in fourth grade was corroborated by the Fauber's daughter at trial. The Ohio appeals court determination that the prosecutor did not knowingly present false testimony from Fauber was not an unreasonable determination of the facts. Objection 2 is overruled.

In Objection 3, Ludwick claims Detective Antinore lied when he testified that Ludwick nodded yes when asked if he understood what the interview was about. Ludwick argues that the head nod was tantamount to a confession to the crime, and he contends that the video would show that he did not nod his head. (Doc. 48, PageID 1652.) To prove this proposition, Ludwick relies in part on the hearsay statement of Attorney J.D. Wagoner, an attorney with no known connection to the case, that "I watched the video, you didn't fucking move." Obviously, that

---

[2] To the extent that Ludwick contends in his Amended Objections that a video conversation between the victim and her mother was submitted into the record on August 5, 2021, the Court rejected that interpretation of the state court record in the Decision and Order on Motion to Expand the Record filed contemporaneously with this Decision and Order on the Merits. Such evidence now is inadmissible under *Pinholster*.

statement is inadmissible and that considering it here would violate *Pinholster*. Ludwick's underlying premise fails as well as discussed above. The Ohio appeals court in the decision denying Ludwick's Rule 26 application explained that Detective Antinore's testimony was simply that Ludwick's nod signaled only that he understood what the detective as talking about. Its determination that Ludwick had not proven the testimony was false is not an unreasonable determination of the facts in the record. Objection 3 is overruled.

In Objections 4 and 5, Ludwick returns to his erroneous contention that the Ohio court of appeals did not decide his ineffective assistance of appellate counsel claims on the merits. (Doc. 48, PageID 1654.) The objections are overruled for the reasons already given.

In Objections 6 and 8, Ludwick disagrees with the Magistrate Judge's application of *Napue v. Illinois*, 360 U.S. 264, 269 (1959). (*Id.*, PageID 1656, 1658.) The Sixth Circuit has held that to prevail on a *Napue* claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012) (citing *Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009)); *Brooks v. Tennessee*, 626 F.3d 878, 894–895 (6th Cir. 2010). Whether or not the Supreme Court's recent decision in *Glossip v. Oklahoma,* 604 U.S. 226 (2025), changed the burden for proving materiality as Ludwick asserts, it did not change the law on the burden to prove falsity. Objection 6 is overruled.

In Objection 9, Ludwick objects to the R&R's conclusion that Ground Three should be dismissed. (*Id.*, PageID 1658.) For the reasons already given, this Objection is without merit and is overruled.

The Court will dismiss the Third Ground for Relief in the Habeas Petition.

**Ground Four: Ineffective Assistance of Appellate Counsel**

In the Fourth Ground for Relief in the Habeas Petition, Ludwick asserts he received ineffective assistance of appellate counsel when his direct appeal attorney refused to assert prosecutorial misconduct in closing argument. The Ohio court of appeals in the decision denying the Rule 26(B) application concluded any such assertion would have been futile because the trial attorney had not contemporaneously objected. (Doc. 6, PageID 273.) The R&R found this conclusion determinative in that Ludwick had not shown excusing cause for and prejudice from the trial attorney's failure to object. (Doc. 37, PageID 1534.)

In his objection, Ludwick asserts that the procedural default the R&R found for this claim can be excused by relying on "the miscarriage of justice exception, which is essentially identical to plain error review, and a similar standard as laid out by *Darden*. That standard being that Ludwick's substantial rights were violated because the comments made the entire proceeding fundamentally unfair." (Doc. 48, PageID 1659.) This objection is overruled because the miscarriage of justice exception requires proof of actual innocence. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Calderon v. Thompson,* 523 U.S. 538 (1998). Ludwick has not presented proof of actual innocence by clear and convincing evidence as required by *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

The Court will dismiss the Fourth Ground for Relief.

**Ground Five: Cumulative Error**

The Fifth Ground for Relief in the Habeas Petition asserts a claim based on cumulative error. Ludwick essentially concedes the Magistrate Judge followed precedent when he held in the R&R that cumulative error is not a cognizable claim in habeas corpus. (Doc. 48, PageID

16

1661.)  He makes objections only to preserve the issue for appellate review.  The Court will dismiss the Fifth Ground for Relief.

**Conclusion**

For these reasons, Ludwick's Amended Objections are **OVERRULED** (Doc. 48) and the Magistrate Judge's Report and Recommendations (Doc. 37) is **ADOPTED**.  The Habeas Petition (Doc. 1) is **DISMISSED WITH PREJUDICE**.  Because reasonable jurists would not disagree with this conclusion, Ludwick is denied a certificate of appealability, and the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.[3]

**IT IS SO ORDERED.**

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

[3]  While these matters were pending, Ludwick filed two additional motions: Motion for Leave to Amend Petition for Writ of Habeas Corpus (Doc. 59) and Motion for Leave to Conduct Discovery (Doc. 60).  The Magistrate Judge denied those motions in a Decision and Order dated November 5, 2025.  (Doc. 61.)  28 U.S.C. § 636 authorizes a district court to reconsider a magistrate judge's order on a non-dispositive matter if it is clearly erroneous or contrary to law.  The Court advises Petitioner Ludwick that Magistrate Judge's Decision and Order to deny the new motions was not clearly erroneous or contrary to law.  This Court also would have denied those motions.